2001 WY 77

**In the Interest of DCP, a child under the age of eighteen years:**

**State of Wyoming, Department of Family Services, Appellant.**

**No. C–00–10.**

Supreme Court of Wyoming.

Aug. 23, 2001.

Gay Woodhouse, Attorney General; Michael L. Hubbard, Deputy Attorney General; Douglas J. Moench, Senior Assistant Attorney General; and Kristen L. Blume, Assistant Attorney General, Representing Appellant.

Mark W. Harris of Harris Law Firm, P.C., Evanston, WY, Representing Appellee (KP).

Before GOLDEN, HILL, and KITE, JJ., and GUTHRIE, D.J.

GUTHRIE, District Judge.

[¶ 1] Appellant, State of Wyoming, Department of Family Services (DFS), appeals an order entered in juvenile court requiring DFS to pay for an out-of-state placement for a juvenile adjudged delinquent under the Juvenile Justice Act. We affirm.

## ISSUE

[¶ 2] DFS states the issue as:

Did the juvenile court exceed its statutory authority when it ordered the State of Wyoming, Department of Family Services to pay for a private out-of-state placement?

## FACTS

[¶ 3] DCP is a minor child born April 26, 1988. Appellee, KP, adopted DCP when he was approximately five years old. In September of 1999, DCP performed acts of delinquency. In November of 1999, KP placed DCP in a residential treatment program in Evanston, Wyoming, the Youth Alternative Home Association (YAHA).

[¶ 4] A petition alleging that DCP was delinquent was filed on December 1, 1999. The initial hearing was held on December 10, 1999. Present at this hearing was DCP, KP, KP's attorney, a DFS representative, a YAHA representative and the Deputy County and Prosecuting Attorney. DCP admitted all the allegations in the petition. Two orders were generated as a result of the initial hearing. The first order was signed by the district court commissioner on December 22, 1999. The second order was signed by the juvenile court judge on January 21, 2000 and was based upon a Court Commissioner's Resume signed by the Court Commissioner on January 20, 2000. In both orders, constructive custody of DCP was placed with the Uinta County Sheriff's Department. In the first order, physical custody of DCP was placed with KP for placement at YAHA and legal custody with KP. The second order placed physical custody of DCP with YAHA and legal custody with DFS. A dispositional hearing was scheduled for January 26, 2000.

[¶ 5] On January 19, 2000, DCP was released by YAHA to KP. The next day, KP moved DCP to a residential treatment program at Primary Children's Hospital in Utah.

[¶ 6] After two continuances, a dispositional hearing was held on April 12, 2000. No one appeared on behalf of DFS at this hearing. The juvenile court entered an order that contained no terms of disposition for DCP. The juvenile court only ordered KP to pay for the cost of DCP's placement at Primary Children's Hospital from the date of his admission until January 26, 2000. After that date, DFS was required to pay all costs not covered by KP's insurance. DFS timely appealed.

## STANDARD OF REVIEW

[¶ 7] All proceedings under the Juvenile Justice Act are regarded as being in equity and this Court shall exercise equitable jurisdiction. Wyo. Stat. Ann. § 14–6–238 (LexisNexis 2001). This appeal involves a question of law requiring statutory interpretation. Conclusions of law are reviewed *de novo. In re NG,* 14 P.3d 203, 205 (Wyo. 2000).

## DISCUSSION

[¶ 8] DFS contends that the juvenile court exceeded its statutory authority when it ordered DFS to pay for a private out-of-state placement. The statutes at issue provide, in pertinent part:

(a) In determining the disposition to be made under this act in regard to any child:

\* \* \*

(v) The court shall not order an out-of-state placement unless:

(A) Evidence has been presented to the court regarding the costs of the out-of-state placement being ordered together with evidence of the comparative costs of any suitable alternative in-state treatment program or facility, as determined by the department pursuant to W.S. 21–13–315(d)(vii), whether or not placement in the in-state program or facility is currently available;

(B) The court makes an affirmative finding on the record that no placement can be made in a Wyoming institution or in a private residential treatment facility or group home located in Wyoming that can provide adequate treatment or services for the child; and

(C) The court states on the record why no in-state placement is available.

Wyo. Stat. Ann. § 14–6–229(a)(v) (LexisNexis 2001). This section references Wyo. Stat. Ann. § 21–13–315(d)(vii) (LexisNexis 2001), which provides:

(d) If a placement of a child is to be made and funded under this section, the predisposition study required by W.S. 14–6–227 shall include:

\* \* \*

(vii) If an out-of-state placement is under consideration, the name, address, program description and costs of each Wyoming institution and each private residential treatment facility and group home located in Wyoming that the department of family services has determined can provide adequate treatment or services for the child, and whether placement in the in-state institution, treatment facility or group home is available.

[¶ 9] Wyo. Stat. Ann. § 14–6–229 authorizes the juvenile court to order the out-of-state placement of a juvenile adjudged delinquent as part of the juvenile's disposition only if certain procedures are followed. The juvenile court's order following the disposi-tional hearing did not specifically order out-of-state placement nor did it specifically include the findings required by statute. DCP was placed at the out-of-state facility by his mother before the dispositional hearing.

[¶ 10] DFS argues that the statutory requirements for out-of-state placement were not followed; therefore, the juvenile court did not have the authority to require DFS to pay for the treatment. KP, on the other hand, argues that the May 11, 2000 order following the dispositional hearing meets the requirements of a court-ordered placement of DCP. KP seems to be arguing that since the May 11, 2000 order requires DFS to pay the costs of the treatment, the juvenile court was in effect ratifying the actions of KP in placing DCP in the out-of-state facility and ordering that DCP remain there. KP argues that nothing in the statute requires an out-of-state placement order be made prior to placement.

[¶ 11] KP also asserts that the other statutory requirements for out-of-state placement have been met. KP points to portions of the record where costs of out-of-state placement were presented to the juvenile court along with comparative costs of Wyoming placement provided by DFS.

[¶ 12] In *In re NG*, 14 P.3d 203, DFS appealed an order by a juvenile court requiring it to pay for electronic monitoring services provided by a private company for a minor child in a child-in-need-of-supervision (CHINS) case. There, when the CHINS petition was filed, the minor was on probation through the municipal court and was wearing an electronic monitor provided by a private company and paid for by the municipal court. *Id.* at 204. Prior to arraignment on the CHINS case, the minor, her mother and DFS agreed to a "CHINS CASE PLAN." The plan acknowledged that NG was on probation and wearing an electronic monitor. Subsequently, the DFS worker wrote a letter to the assistant district attorney and attached the case plan. The letter indicated the court date had been cancelled because they were in agreement to follow the case plan. *Id.* at 205.

[¶ 13] In September of 1998, the DFS worker recommended that electronic monitoring be discontinued. At NG's arraignment in October of 1998, NG admitted the allegations in the petition and the juvenile court discontinued the electronic monitoring. In November of 1998, the juvenile court found that the electronic monitoring services were reasonable and in the best interest of the minor. The court ordered DFS to pay for the monitoring services. *Id.*

[¶ 14] Similar to the arguments here, DFS argued in *In re NG* that the court lacked the statutory authority to order DFS to pay for services such as electronic monitoring. *Id.* DFS argued that its duties in CHINS cases are explicitly defined by statute. *Id.* This Court took an equitable approach. "The purpose of the law is to promote the best interests of the children. DFS and the juvenile court must work together to that end. To accomplish this task, it is necessary for both the agency and the court to have somewhat more flexibility than DFS would concede." *Id.* This Court also held that "[i]t is not reasonable to expect the legislature to foresee every method that might be employed to assist a juvenile." *Id.*

[¶ 15] The important similarity is that the electronic monitoring services were never explicitly ordered by the juvenile court in the CHINS case. Justice Golden dissented in *In re NG*, arguing that "DFS should only be responsible for payment of electronic monitoring services when ordered by a juvenile court or required by the CHINS statutory framework."*Id.* at 206 (Golden, J., dissenting). Justice Golden noted that the monitoring took place prior to the juvenile court having jurisdiction and the court took no action "indicating the monitoring services were required, and did not order electronic monitoring services nor approve the services as part of a consent decree." *Id.* "We should not require DFS pay for juvenile services that have not resulted from a juvenile court order * * *." *Id.*

[¶ 16] Wyo. Stat. Ann. § 14–6–229(a)(v) states that "[t]he court shall not order an out-of-state placement" unless certain evidence is presented and the district court makes affirmative findings on the rec-

ord. "Where a statute uses the mandatory language 'shall,' a court must obey the statute as a court has no right to make the law contrary to what is prescribed by the legislature." *In re LePage*, 2001 WY 26, ¶ 11, 18 P.3d 1177, 1180 (Wyo.2001).

[¶ 17] We must also keep in mind our longstanding principle that the exercise of equitable jurisdiction may not prevail over statutory language. In *In re Hartt's Estate*, 75 Wyo. 305, 295 P.2d 985, 991 (1956), this court stated that, when invoking equitable jurisdiction, "mandatory statutes must be obeyed and * * * courts have no right to make a law contrary to that prescribed by the legislature." Similarly, "courts of equity are powerless to vary the direct mandate of legislative enactments as are courts of law * * *." *In re Hartt's Estate*, 295 P.2d at 996. In sum, "[e]quity follows the law." *Brewer v. Folsom Brothers Co.*, 43 Wyo. 433, 5 P.2d 283, 290 (1931).

[¶ 18] Upon careful examination of the facts that appear in the record, we conclude the statutory framework of Wyo. Stat. Ann. § 14–6–229(a)(v) has been substantially adhered to in the instant case. Although the juvenile court did not provide an order prior to DCP's out-of-state placement, there is no statutory language which necessitates that the applicable requirements be met prior to placement. A review of the record makes it clear that comparative costs of placement in Wyoming as well as the costs of the out-of-state placement were presented to the juvenile court. In addition, there was a discussion at the hearing based upon the recommendations of Primary Children's Hospital that it was important for KP to play an active role in DCP's treatment. KP would not have been sufficiently involved at the instate proposed treatment facilities due to their location, thus affecting the availability of those facilities.

[¶ 19] We assume the juvenile court made a careful review of the entire record, and we conclude the juvenile court had sufficient information to properly require DFS to pay for the out-of-state placement of DCP. In this case, we conclude there was a clear indication that the out-of-state placement effectuated

the protection of public safety and provided for the care, protection, and mental and physical development of DCP. Wyo. Stat. Ann. § 14–6–201(c)(ii), (iii) (LexisNexis 2001). The interests of judicial economy will not be served by a remand in this case so that the juvenile court's findings can be placed on the record. However, in the future, we require affirmative findings to be placed on the record in accordance with the mandatory language in the applicable statutes. This will allow this Court to properly review a juvenile court's decision to assure a comprehensive consideration of all relevant factors was completed.

[¶ 20] The order of the juvenile court is affirmed.

GOLDEN, Justice, dissenting.

[¶ 21] Once again I find myself at odds with a majority opinion of this Court over the interpretation of how the legislature intends a juvenile court action to proceed. In this case, the majority opinion holds that a mother may unilaterally determine an out-of-state private placement for her son and, simply because a delinquency petition has been filed against her son, the juvenile court may order the State of Wyoming to pick up the bill for such private placement. Because I do not agree that the legislature intended such haphazard expenditure of public funds, I respectfully dissent.

[¶ 22] This case involves statutory interpretation of the Juvenile Justice Act, Wyo. Stat. Ann. § 14–6–201 through § 252 (Lexis-Nexis 2001). Many of the general statements regarding interpretation of the Juvenile Justice Act contained in my dissent in the recent case of *WJH v. State*, 2001 WY 54,

¶¶ 27, 30, 24 P.3d 1147, ¶¶ 27, 30 (Wyo.2001) are equally applicable here. The Juvenile Justice Act must be interpreted as a whole. Any interpretation must start with the premise that the juvenile court is a court of limited jurisdiction. The juvenile court must have statutory authority for its actions.

[¶ 23] In this case, the juvenile court has ordered the State of Wyoming Department of Family Services to pay for a private placement unilaterally selected by a juvenile's mother. The majority opinion legitimizes this action by holding that Wyo. Stat. Ann. § 14–6–229(a)(v) was "substantially adhered to," thus authorizing the order for payment. As a matter of statutory construction, I disagree with this holding on two grounds.

[¶ 24] First, § 14–6–229 does not apply to the facts of this case. Section 14–6–229 is the statutory section defining options available to the juvenile court in determining the disposition for a juvenile adjudicated delinquent. The operative language in that statute under review is: "In determining the disposition to be made under this act in regard to any child ... the court shall not order an out-of-state placement unless...." By its terms, its application is limited to situations in which the juvenile court is considering ordering an out-of-state placement as part of the terms of disposition of a juvenile adjudicated delinquent. This section has no application to the facts of this case. At no time did the juvenile court order placement of DCP at Primary Children's Hospital in Utah, whether as part of disposition or otherwise.[1] This should be the end of the discussion. Because the majority opinion goes further, however, so shall I.

---

1. I note a serious concern as to whether the juvenile court process was even properly in the dispositional phase. The initial hearing was held before the court commissioner, not the court. The juvenile purportedly admitted to the allegations in the petition, and the court commissioner issued the "Initial Hearing Order" adjudicating DCP delinquent and ordering custody arrangements and various other matters. Although the court commissioner's "order" was ratified by the juvenile court almost a month later, holding an initial hearing before the court commissioner seems to exceed the authority of the court commissioner, thus rendering the adjudication void.

I also note a concern over the policy of the juvenile court to tape record the initial hearing but only retain the tape recording for four months. Thus, no transcript of the initial hearing is available for this appeal, and this Court cannot review the proceedings at that initial hearing. These are serious issues affecting the fundamental rights of DCP, and this Court could therefore take cognizance of them. However, because neither issue has been addressed by the parties in this appeal, the issues are better left to another day when they may be directly on point before this Court.

[¶ 25] Second, accepting arguendo that § 229 somehow can be applied to these facts, there was no substantial compliance with § 229. Substantial compliance requires compliance with all material provisions of a statute. The principle of substantial compliance exists to allow for irregularities that do not affect any substantive principles. *See generally State v. Dobbs*, 70 Wyo. 26, 35, 244 P.2d 280, 282–83 (Wyo.1952).

[¶ 26] By even applying § 229 to the facts of this case, the majority opinion obviously concludes that the language applying this section only to court orders of disposition is not material and can be ignored, essentially removing the section from its context within the Juvenile Justice Act. The application of this section is thus broadened to apply to any placement at any time for any reason, judicially creating a substantive change in the law. This Court should not extend the application of this section beyond what is obviously and clearly intended by the legislature. There can be no substantial compliance with this section when no attempt is being made to apply the section to an order of disposition.

[¶ 27] Further, looking specifically at subsection 229(a)(v),[2] the substantive purpose of this subsection is clear. In a perfect world, every juvenile would receive the best treatment available. This, however, is not a perfect world. This is a world in which budgetary constraints are a reality. The legislature is well aware of these budgetary constraints and has adopted a statutory scheme to help ensure that the best possible treatment is available to the greatest number of Wyoming juveniles. The statutory scheme includes limitations on the juvenile court's ability to order out-of-state placements. The limitation, put simply, is that certain specific evidence must be submitted that all in-state options have been examined and that the out-of-state placement is the most economical, suitable alternative. This limitation is intended to protect the dollars of Wyoming taxpayers as well as to protect **all** juveniles who may come into the system needing help.

[¶ 28] The record simply does not support the conclusion that the statutorily required factual information was presented to the juvenile court. Subsection 229(a)(v)(A) requires certain evidence to be presented to the juvenile court on costs of placement options "as determined by the department" of family services. There was no representative of the Department of Family Services present at the hearing from which the order for payment originated. Thus, the Department did not present any direct evidence or argument regarding costs of placements. Further, Wyo. Stat. Ann. § 21–13–315(d)(vii)[3] requires very specific information to be present in the predisposition report of the Department of Family Services. None of this information was included in the predisposition report.

[¶ 29] Again, the majority opinion obviously concludes that the legislature was only adding superfluous language when it required the presentation of very specific cost information "as determined by the department." I cannot agree that requiring the State to provide very specific cost information is not a material provision in a statute intended to protect public money. Because no cost information "as determined by the department" regarding suitable alternative in-state facilities was presented to the juvenile court, there was no compliance with the statute, substantial or otherwise.

[¶ 30] Subsections 229(a)(v)(B) and (C), for the purposes of this appeal, are somewhat related. They require respectively the juvenile court to make "an affirmative finding on the record that no placement can be made in" Wyoming and to state "on the record why no in-state placement is available." While some information was presented on the efficacy of the placement at Primary Children's Hospital in Utah, there was no information regarding suitable in-state options. The juvenile court specifically asked if the Wyoming State Hospital in Evanston had been considered, and the mother answered that it had not been considered. No cost information was presented regarding the Wyoming State Hospital nor was any information pre-

---

**2.** The complete text of Wyo. Stat. Ann. § 14–6–229(a)(v) is found in the majority opinion at ¶ 8.

**3.** Cited in full in the majority opinion at ¶ 8.

sented regarding its suitability as a placement alternative for DCP. Thus, at least one potentially viable alternative was not even considered at the hearing, nor was it considered before the placement.

[¶ 31] In fact, the mother stated to the juvenile court that she did not seriously consider placing DCP any place other than Primary Children's Hospital. The mother was informed, before her placing her son at Primary Children's Hospital, that other in-state alternatives might be options, but she placed DCP at Primary Children's Hospital because she was told that it could provide the best evaluation and treatment. As she stated to the juvenile court, she believed Primary Children's Hospital "was the best place to do the eval on [DCP] and the eval was to take two to three weeks and then start treatment." While the intentions of the mother are commendable, and she may even be correct in her determination that Primary Children's Hospital was the best possible placement for her son, the placement still was made with no regard for the juvenile court process and no regard for the budget of the State of Wyoming Department of Family Services. If anything is clear from § 229(a)(v), it is that the State cannot be financially liable for such a decision.

[¶ 32] The filing of a petition alleging a juvenile is delinquent begins a judicial process. The judicial process is delineated by the legislature in the Juvenile Justice Act. Again, my general comments regarding the dispositional process in my dissent in *WJH*, at ¶¶ 56, 57, apply to this case. The dispositional process is supposed to be marked by a group of professionals investigating the specific circumstances of a juvenile and making recommendations as a team to the juvenile court. The juvenile court then acts upon those recommendations. In this case, despite the fact that there was a judicially appointed and operating multidisciplinary team, the mother unilaterally placed her son

in Utah.[4] The juvenile court was not approached for a court order for such a placement.

[¶ 33] It would have been an easy matter to bring a placement of DCP within the ambit of the Juvenile Justice Act. The mother is a party to the juvenile court proceedings[5] and as such at any time could have requested a hearing before the juvenile court. Because the mother obviously wanted a medical evaluation of her son before disposition, she could easily have requested the juvenile court to order such under Wyo. Stat. Ann. § 14–6–219(a) (LexisNexis 2001) which states:

Any time after the filing of a petition, on motion of the district attorney or the child's parents, guardian, custodian or attorney or on motion of the court, the court may order the child to be examined by a licensed and qualified physician, surgeon, psychiatrist or psychologist designated by the court to aid in determining the physical and mental condition of the child. The examination shall be conducted on an outpatient basis, but the court may commit the child to a suitable medical facility or institution for examination if deemed necessary. Commitment for examination shall not exceed fifteen (15) days.

Thus, the mother could have requested the juvenile court to order a medical evaluation and could have requested the evaluation be done at Primary Children's Hospital in Utah. If the court had so ordered, then DCP could have been evaluated in Utah and the county would have paid for the evaluation.[6] The mother also could have requested the placement in Utah for evaluation and treatment as part of disposition, but no proper dispositional hearing ever occurred.[7]

[¶ 34] Certainly the juvenile, the parents, and other interested parties continue to live their lives and make their own personal decisions while the judicial process is underway,

---

4. The record contains no report from the multidisciplinary team.

5. Wyo. Stat. Ann. § 14–6–201(a)(xviii) (LexisNexis 2001) defines "party" as including "the child, his parents...."

6. Wyo. Stat. Ann. § 14–6–235(b)(iv) (LexisNexis 2001). "Costs of any physical or mental examinations or treatment ordered by the court" are to be paid by the county.

7. The case was terminated before any judicially determined disposition.

but such personal decisions should not be confused with judicially authorized decisions. Personal decisions are made entirely at the risk of the individual. Indeed, in this case, upon unilaterally making the decision to place her son at Primary Children's Hospital in Utah, the mother acknowledged that she would be responsible for the costs, at least until the scheduled dispositional hearing was held. The dispositional hearing was postponed twice, the first time because "the juvenile is undergoing an evaluation at Primary Children's Hospital and will not be completed by said date" while the second continuance was granted at the joint request of the mother and the prosecuting attorney.

[¶ 35] The critical factor in this case is that the mother was in complete control of the placement. She was the one who placed DCP at Primary Children's Hospital in Utah, acknowledging that it was at her own expense. She is the one who decided to keep DCP at Primary Children's Hospital not only for a complete evaluation but also for treatment. She could have asked for a hearing before the juvenile court to bring the placement within the parameters of the Juvenile Justice Act. She did not make any effort to do so. Indeed, she acquiesced in two continuances of the dispositional hearing, thus avoiding the juvenile court. It was only after DCP had completed his evaluation and almost completed treatment that DCP's mother came before the juvenile court. The hearing was ostensibly a dispositional hearing but the mother, through her attorney, stated up front that there was no need for the juvenile court to address the disposition of DCP. Instead, the only issue addressed was the oral request from DCP's mother that the juvenile court order the State of Wyoming Department of Family Services to pay for the costs of a placement she unilaterally chose completely outside of the framework of the Juvenile Justice Act.[8]

[¶ 36] My dissent in In re NG, 14 P.3d 203 (Wyo.2000), which the majority opinion

has quoted in part, is equally applicable here. The people of Wyoming should not be required to pay for a private placement that was undertaken with absolutely no regard for the procedural and substantive requirements of the Juvenile Justice Act. The legislature has clearly enacted statutes that protect against such an outcome and such statutes should not be ignored or interpreted by this Court so broadly, under the guise of substantial compliance, as to lose all their intended protective effect.

[¶ 37] Because the majority opinion does not properly analyze the pertinent statutory language and extends the principle of substantial compliance beyond all recognition, I respectfully dissent.

---

8. By affirming the court order of payment in this case, it is interesting to note that the majority opinion, while properly emphasizing the need for the Department of Family Services and the juvenile court to work together to promote the best interests of children, has in effect cut the Department of Family Services out of the process all together, calling only on the Department's checkbook at the end of the day. The statutory scheme is clear that procedurally and substantively such a result is unacceptable.